# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-01146-COA

**ELIZABETH ANN CARROLL AND THOMAS B. BUTCHART**　　　　　　　　**APPELLANTS**

**v.**

**CITY OF CANTON, MISSISSIPPI**　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/2019 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JAMES H. HERRING |
| ATTORNEY FOR APPELLEE: | KIMBERLY CELESTE BANKS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/12/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.　In 2015, the City of Canton's Board of Aldermen denied Elizabeth Carroll and Thomas Butchart's request for an extension of a special-use permit to operate their RV park. The Board gave them one year to wind down operations. At the end of that time, instead of closing, Carroll and Butchart filed another application for an extension of the permit. The Board denied the application, and Carroll and Butchart appealed to the Circuit Court of Madison County, claiming that the Board's actions were arbitrary and capricious and lacked substantial support. The circuit court affirmed the Board's actions, and Carroll and Butchart appeal to this Court, raising the same arguments. In response, the City claims that this Court

lacks jurisdiction, that the appeal is moot, and that the Board's actions were not arbitrary or capricious and were supported by substantial evidence. We find that this Court does have jurisdiction, that the appeal is not moot, and that the Board's actions were not arbitrary or capricious and had sufficient support. We therefore affirm the circuit court's order that approved the City's denial of Carroll and Butchart's request.

**FACTS**

¶2. Brother and sister Elizabeth Carroll and Thomas Butchart are co-owners of a 5.5 acre parcel of property located at 2747 South Liberty Street (Highway 51) in the city of Canton, Mississippi. The parcel is a portion of twenty-five acres of property they acquired through exchanges with other family members. The acreage was originally zoned as residential.

¶3. In May 2002, the City approved the five acre parcel for use as a recreational vehicle (RV) park, which was incorporated as "Hwy 51 RV Park, Inc." The park's initial intent was to house construction workers when the Nissan plant was being built, but by July 2016, only three-to-four people living there were employed by Nissan. Currently the park, utilized by travelers and full-time residents, averages about forty recreational vehicles (with no mobile homes) at any given time. The units belong to the individuals, but the park provides water, sewer, and electrical service and pays City and State property and income taxes. Butchart spent considerable time and money preparing the site for use.

¶4. Since 2002, the RV park has operated under its "Special Exception/Conditional Use" permit, which has been renewed twice even though the City adopted a Uniform Development Code and the area was re-zoned "C-3" (i.e., commercial). By 2015, other developments in

2

the C-3 commercially zoned RV park area included the Links Apartments, a Bumpers Restaurant, an Exxon Gas Station, a Scott Petroleum, and Bear Creek Store. But across the road, there is a residential subdivision called "Parkside of Eastgate."

¶5. In 2015, Carroll and Butchart again applied for a renewal of the permit. They did not seek a permanent exception or re-zoning. The City's Planning Commission considered their application and recommended an extension of five years.[1] But the Board rejected the recommendation. Instead, the City gave Carroll and Butchart sixty days to cease operations. Carroll and Butchart initiated an appeal of the City's decision by filing a "Bill of Exceptions" in the circuit court. But they withdrew the appeal when they and the Board agreed to a one-year moratorium to enable residents to leave and to give Butchart and Carroll more time to

---

[1] Under the City's Uniform Development Code, the Planning Commission makes recommendations, and the Board decides the matter:

**1.600.09 CONDITIONAL USES (SPECIAL EXCEPTIONS)**:

Applications for conditional uses shall be filed with the Zoning Administrator on forms and with supporting material as required by this ordinance. The Zoning Administrator receives, reviews, and makes recommendations to the Zoning Commission on each conditional use application. The Zoning Administrator shall then establish an agenda for public hearing cause notice of the time and place thereof to be published. The Zoning Commission holds a public hearing and reviews each conditional use application and makes a recommendation for or against approval to the Mayor and Board of Aldermen for final disposition. The Mayor and Board of Aldermen are empowered to hear and decide whether or not proposed conditional uses (special exceptions) authorized under this Ordinance should be granted after reviewing the application and any recommendations from the Zoning Administrator and Zoning Commission.

3

close the RV park.[2]

¶6.     After the expiration of the one-year period given by the Board, the Planning Commission sent Butchart a notice to cease operations. Instead of doing so, on May 11, 2016, Butchart submitted to the Planning Commission another application for renewal of the property's conditional use permit. Butchart admitted that his request was for a temporary, not a permanent, use exception, nor was it a request for re-zoning.

¶7.     The matter came before the City's Planning Commission on July 28, 2016. At that time, Butchart, a certified public accountant and owner of other businesses in Madison County, addressed the Board and reviewed the RV park's history. He noted that fifteen years prior, when they obtained their first use exception, he understood that if the presence of the park impeded the growth of the city, it would be shut down. But he argued it has not. It had been well-maintained, landscaped, and fenced. During the hearing, one Planning Commission member commented that even though the RV park existed when the new zoning ordinance passed, it could not be "grandfathered in" because it was not a permanent use, only a temporary use. Butchart's attorney recommended that the Planning Commission look at updating their zoning ordinance so that Butchart would not have to keep coming back to request a special-use exception. But the Planning Commission did not want to get into spot zoning[3] and said that the current C-3 designation is really a catch-all designation.

_____

[2] Because that appeal was dismissed, the record in this appeal does not contain that 2015 Bill of Exceptions or any of the evidence that was presented to the City when it denied Carroll and Butchart's request.

[3] "Impermissible 'spot zoning' occurs when a board rezones a particular 'spot' which is not in character with the zoning of the surrounding properties." *Thomas v. Bd. of*

4

¶8.     During the Planning Commission hearing, a letter from the Parkside of Eastgate Homeowners Association was acknowledged in which homeowners who resided within 160 feet of the RV park objected to the special-exception application. However, although the Planning Commission sent homeowners notice of the hearing, no one from the Association appeared to testify. Despite the objection, the Planning Commission recommended that Carroll and Burchart's renewal request be granted and that their permit be extended for two years, until July 2018.

¶9.     As previously stated, the Planning Commission had no authority to grant or deny Butchart's request—only to refer its recommendation to the City's mayor and the Board of Aldermen. The mayor and Board met on August 2, 2016 to consider the Commission's recommendation on Butchart's request. One Board member commented that the park's presence had negatively affected the value of the residential homes in the area. Homeowners had been told that the park was not permanent and felt betrayed. There was also concern about criminal activity in the park. Butchart responded that he knew of only a couple of instances when the police had to be called. Board members were also concerned that Butchart had not honored their 2015 decision that gave him time to close. Butchart presented a petition signed by residents of the RV park asking that the park be kept open because of its proximity to many of their worksites and because it was less expensive that the other RV park in the county. Butchart admitted that the park was now a business, and he presented to the Board his compilation of the tax benefits that the business brought to the City. Another

_Supervisors of Panola Cty._, 45 So. 3d 1173, 1187 (¶43) (Miss. 2010).

Board member was concerned that the Planning Commission and the Board seemed to have different viewpoints on the application. The Board then voted to table the discussion until it could meet with the Planning Commission.

¶10. On August 16, 2016, the Board of Aldermen reconvened. Butchart appeared again and passed out the transcript of the August 2 Board meeting. Alderman Gilkey said that since the last meeting, the Board had realized that it made a decision about the park back in 2015. The Board had not met with the Planning Commission but there was a member of the Planning Commission present whom Alderman Gilkey asked to come forward and speak. That the Board did in fact grant Butchart a one-year moratorium from enforcement of the Board's 2015 decision was confirmed by a review of the minutes from April 7, 2015, which reflected a unanimous vote to "delay enforcement" for one year.

¶11. The Board continued to discuss what it was actually considering—how long of a period of time to give Butchart to close down the park in enforcement of the prior order, or consideration of the Planning Commission's recommendation on a new request. Donald Lawrence, the City's Building and Development Director, confirmed that the Planning Commission had recommended approval of Butchart's request for a two-year extension. However, several aldermen felt that Butchart should have complied with the notice to cease operations instead of being given another chance to present a new application. Butchart was given five minutes to speak, during which time he presented a spreadsheet showing that Parkside Eastgate subdivision homes had increased in value, not decreased. The Board resumed its discussion. A motion to grant Butchart ninety days to cease operations was

6

made. One Board member moved to revise the motion to allow Butchart to operate the RV park indefinitely. This latter motion failed. The Board then voted on the ninety-day extension, which passed by a five-to-two vote.

¶12. On August 25, 2019, Carroll and Butchart filed their notice of appeal from the Canton Board of Alderman's decision in the Circuit Court of Madison County, Mississippi. On August 26, 2016, Carroll and Butchart presented the mayor and the City with their "Bill of Exceptions." The mayor refused to sign it because he believed it included more information than was presented to the Board. The mayor gave Butchart his own Addendum. Butchart and Carroll filed their Bill of Exceptions along with the mayor's Addendum with the Circuit Court of Madison County, Mississippi that day. The Bill of Exceptions and Addendum were later amended with the court's approval.

¶13. Butchart filed a motion for supersedeas, attaching his affidavit and that of a resident of the RV park to show the need for a stay of the Board's decision. After a telephonic hearing on the matter, on October 31, 2016, the circuit court granted the motion and stayed the effectiveness of the decision made by the Board until final resolution of the matter on appeal.

¶14. The docket of the case reflects that no action taken by any party in 2017. In 2018, the Bill of Exceptions was again amended with court approval, and in 2019, the issues were briefed to the circuit court. On June 14, 2019, the circuit court issued its order, which was entered on June 17, 2019. In it, the circuit court found that "the Board's denial of Carroll and Butchart's application to renew or grant to them a special exception and/or 'conditional use

7

permit' is supported by substantial evidence and is not arbitrary or capricious."

¶15.    From that order, Carroll and Butchart timely appealed to the supreme court on July 15, 2019,[4] claiming that the Board's action was arbitrary and capricious and not supported by the evidence.  In response, the City argued that the appellate court has no jurisdiction, that the issue is moot, and that the Board's decision was not arbitrary or capricious and was supported by the evidence.

## STANDARD OF REVIEW

¶16.    "When the appellate court reviews a decision by a circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow." *Miss. Sierra Club Inc. v. Miss. Dep't of Envtl. Quality*, 819 So. 2d 515, 519 (¶15) (Miss. 2002).  "Decisions by the governing authorities of a municipality are subject to limited review. . .[and] will be overturned only if the decision (1) was beyond its scope or power; (2) violated the constitutional or statutory rights of the aggrieved party; (3) was not supported by substantial evidence; or (4) was arbitrary or capricious." *Jones v. City of Canton*, 278 So. 3d 1129, 1131 (¶7) (Miss. 2019) (citation and internal quotation marks omitted).  Questions of law, including matters of jurisdiction, are reviewed de novo.  *City of Jackson v. Allen*, 242 So. 3d 8, 13 (¶17) (Miss. 2018).

## DISCUSSION

I.      **Whether this Court has jurisdiction.**

¶17.    The City argues that the record submitted to the circuit court went beyond the minutes

_____

[4] The thirtieth day to file a notice of appeal fell on Saturday, July 13, 2019, making the Monday, July 15, 2019, filing timely.

8

and materials presented to the Board of Aldermen when it made its decision. Therefore, it claims this Court lacks jurisdiction to consider the appeal. In response, Carroll and Butchart point to the October 17, 2018 order of the circuit court granting their motion to amend the record to include various items. Thus, the record is not missing anything pertinent and important.

¶18. Until July 2018, "the bill of exceptions serve[d] as the record on the appeal of a decision by a municipal authority."[5] *Jones*, 278 So. 3d at 1131 (¶7). In *City of Jackson*, the Mississippi Supreme Court clarified previous holdings on the issue of whether a fatally defective bill of exceptions robs the courts of jurisdiction:

> Appellate jurisdiction in the circuit court is, by operation of the Mississippi Constitution, a matter of legislative prerogative. Miss. Const. art. 6, § 156. While Section 11-51-75 by its plain language requires that an appeal from a county or municipal board be accomplished via a bill of exceptions and that the appeal be made within ten days, it contains very little else that sets forth jurisdictional requirements. Notably absent from the statute—unlike the statute at issue in *McDonald*[6] upon which the *Stewart*[7] Court in part relied—are specific content requirements. Jurisdiction is defined as a "court's power to decide a case or issue a decree." Jurisdiction, Black's Law Dictionary (10th ed. 2014). When the *Stewart* and *Weathersby*[8] Courts wrote in terms of jurisdiction, they misused the term. It is clear that failing to embody a sufficient record in the bill of exceptions can be fatal to the attempted appeal—as shown above, such has been the case since the first days of our

---

[5] In 2018, the Legislature amended Mississippi Code Annotated section 11-51-75 (Rev. 2012) to provide that an appeal from a city council decision shall be taken by filing a notice of appeal rather than a bill of exceptions. 2018 Miss. Laws ch. 448, §1 (H.B. 1239). However, those amendments do not affect this appeal.

[6] *McDonald v. Spence*, 179 Miss. 342, 174 So. 54 (1937) (superceded by statute).

[7] *Stewart v. City of Pascagoula*, 206 So. 2d 325 (Miss. 1968) (superceded by statute).

[8] *Weathersby v. City of Jackson,* 226 So. 2d 739 (Miss. 1969).

9

State. Yet, in other cases, we have allowed appeals made via the bill of exceptions to proceed despite flaws. *Yellow Cab Company of Biloxi v. City of Biloxi*, 372 So.2d 1274 (Miss. 1979). However, we clarify *Stewart* and *Weathersby* and make it clear that, fatal or not, an insufficient record does not rob the circuit court of jurisdiction as the term is properly understood.

*City of Jackson*, 242 So. 3d at 21 (¶49).

¶19. In the case at hand, the City argues that the Bill of Exceptions is fatally flawed, not because it is deficient but because it includes too much. The City correctly states the law that an appeal of a board's decision concerning zoning matters is strictly limited to the record of what occurred before the board as contained in a bill of particulars. *See Gallagher v. City of Waveland*, 182 So. 3d 471, 475 (¶19) (Miss. Ct. App. 2015). However, the circuit court in this matter twice heard motions to amend the bill of exceptions. The circuit court determined that the Bill of Exceptions was proper. The City's concerns about the bill of exceptions may affect other issues of this appeal, but they do not affect the jurisdiction of either the trial court or this court on appeal. We find that this court does have jurisdiction to hear this case.

**II. Whether the case is moot.**

¶20. The City next argues that this case is moot, making any decision by this Court prohibitively advisory. It claims that if the City erred in failing to accept the Planning Commission's recommendation of a two-year extension of Butchart's special-use exception, the recommended extension would have expired in July 2018. Carroll and Butchart did not request a permanent extension, and therefore the time has expired even if Butchart's appeal results in a reversal of the Board's decision. Carroll and Butchart respond that the circuit court's order of October 31, 2016, stayed the execution of the Board's order, and thus the

10

case is not moot.

¶21. "Cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot." *Barrett v. City of Gulfport*, 196 So. 3d 905, 910-11 (¶17) (Miss. 2016). Moreover, if a decision, if rendered, would be of no practical benefit to the appellant, the case is moot. *Id.* In *Barrett*, the Gulfport City Council had approved the use of an historic home as a recreational center. *Id*. at 906 (¶1). Two citizens appealed that decision, but during the pendency of the appeal, the use application was withdrawn. *Id.* The Mississippi Supreme Court affirmed the circuit court's dismissal of the appeal on mootness grounds. *Id.* at 911 (¶18). The supreme court reviewed the exceptions to mootness which include matters of public interest or if the challenged action is capable of repetition, yet evading review. *Id*. at 912-13 (¶¶22-24). It found neither of these applied and dismissed the appeal. *Id.*

¶22. In the case at hand, Butchart has appealed the City of Canton's 2016 refusal to accept the Planning Commission's recommendation to extend his special-use permit for two years. The City granted only a ninety-day extension to enable Butchart to discontinue his operation. After appealing to the circuit court, Butchart filed a motion for supersedeas (basically, for injunctive relief to stay execution of the City's ruling). The circuit court granted that motion, and its authority to do so is not challenged in this appeal. That order effectively freezes the ninety-day extension in time until resolution of this case on appeal. Whether we affirm or reverse the Board's decision, Carroll and Butchart still have at least ninety days from the date of the final opinion on appeal to cease operations or two years of future operation. The park

11

is apparently continuing to operate and thus, the resolution of this appeal has concrete ramifications to Carroll and Butchart. We find that the controversy has not expired and in our opinion, the issues are not moot.

### III. Whether the City's decision was arbitrary or capricious or not supported by substantial evidence.

¶23. A board's decision regarding a special-use exception is an adjudicative rather than a legislative act. *Como Steak House Inc. v. Bd. of Supervisors of Panola Cty.*, 200 So. 3d 417, 421 (¶11) (Miss. 2016). "We will not disturb the City's decision concerning a special exception application unless we find that the decision was 1) unsupported by substantial evidence, 2) arbitrary or capricious, 3) beyond the Board's scope or powers, or 4) in violation of a party's constitutional or statutory rights." *Id*. A governing board's decision concerning a zoning or special-use exception is presumptively valid and the burden of proof is on the one claiming it to be invalid. *Foster v. City of Pass Christian*, 117 So. 3d 658, 659 (¶5) (Miss. Ct. App. 2013).

¶24. "Substantial evidence has been defined as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion' or to put it simply, more than a 'mere scintilla' of evidence." *Hearne v. City of Brookhaven*, 822 So. 2d 999, 1002-03 (¶9) (Miss. Ct. App. 2002). It is "something less than a preponderance of the evidence but more than a scintilla or glimmer." *Como Steak House*, 200 So. 3d at 422 (¶15). An agency or board's action is "arbitrary" if it is not done according to reason but depending the will alone. *Id*. at 425 (¶38). In *City of Petal v. Dixie Peanut Co.*, 994 So. 2d 835, 837-38 (¶8) (Miss. Ct. App. 2008), we stated the guidelines set by our state supreme court for determining whether

an action is arbitrary and capricious:

> "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending on the will alone,—absolute in power, tyrannical, despotic, non-rational,—implying either a lack of understanding of or disregard for the fundamental nature of things.

> "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. . . .

(Quoting *Harrison Cty. Bd. of Supervisors v. Carlo Corp.*, 833 So. 2d 582, 583 (¶16) (Miss. 2002)).

¶25. Often, the concept of an issue's being "fairly debatable" is used when determining whether an action is arbitrary or capricious.

> "Fairly debatable" is the antithesis of arbitrary and capricious. If a decision is one which could be considered "fairly debatable," then it could not be considered arbitrary or capricious, although we continue to use both standards.

*Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987). If a governing board's decision is merely "debatable," the appellate court will not overturn the circuit court's affirmation of that decision. *Trappey v. Newman*, 281 So. 3d 58, 61 (¶8) (Miss. Ct. App. 2019).

¶26. Carroll and Butchart argue that the evidence they put before the Planning Commission and the Board supporting their application for renewal was "overwhelming and uncontested," making the City's rejection of its application arbitrary and capricious. An examination of the record does show that the property is well-maintained and generates tax revenue for the City. But during the hearing, aldermen articulated concerns about public safety (i.e., police calls,

13

which Butchart admitted had occurred), and the general public interest (as shown by the objection of residential homeowners across the road). The objection letter reminded the Board that the RV park was originally granted a special use-exception to house construction workers for the Nissan Plant. That need has long expired as has the need for the RV park, which the homeowners characterized as more akin to a trailer park, which in some settings can devalue neighboring property values.[9] Where there is evidence supporting both sides of an argument on a land use application, we have deferred to the administrative agency's ultimate decision. In *Saunders*, we said that in such an instances, "it is hard to see how the ultimate decision could be anything but 'fairly debatable,' not 'arbitrary and capricious,' and therefore beyond our authority to overturn." *Saunders*, 511 So. 2d at 907. A reviewing appellate court must give deference to an administrative decision, and if the decision can be viewed as "fairly debatable," it will be affirmed. *Drews v. City of Hattiesburg*, 905 So. 2d 719, 722 (¶7) (Miss. Ct. App. 2004).

¶27. Significantly in this case, Carroll and Butchart approached the Board from a position of non-compliance with the Board's prior order. They give no explanation for their failure to cease operations after the first year-long extension given them by the Board in 2015. The Board itself appeared to desire enforcement of its prior order over consideration of Butchart's application anew. Whether to tolerate non-compliance with a Board order that was not appealed and final, or to allow a dissatisfied landowner to avoid a valid Board order by

---

[9] *Cf. Manufactured Hous. Ass'n v. Bd. of Supervisors of Tate Cty.*, 878 So. 2d 180, 192 (¶29) (Miss. Ct. App. 2004) ("Property values and aesthetics are valid concerns for zoning ordinances, and zoning ordinances may be applied to manufactured housing to further that goal.").

14

merely filing a new application, is a substantial factor that the Board considered in this case. "If the Board's decision is founded on substantial evidence, and is not arbitrary or capricious, it is binding on this Court." *Hearne v. City of Brookhaven*, 822 So. 2d 999, 1005 (¶22) (Miss. Ct. App. 2002) (quoting *Bowling v. Madison Cty. Bd. of Supervisors*, 724 So. 2d 431, 436 (¶22) (Miss. Ct. App.1998)). From our review of the record, we find that the Board's decision, even if debatable, was founded on substantial evidence and was not arbitrary or capricious.[10]

## CONCLUSION

¶28. We find that the decision of the circuit court should be affirmed because our review of the City's act in denying Carroll and Butchart's application for renewal of its special-use permit was not arbitrary and capricious and was supported by substantial evidence.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE,**

---

[10] We decline to address Carroll and Burchart's argument that their RV park special use exception application should have been granted because it is a conditional use that was approved prior to the adoption of the Unified Development Code and thus should be "grandfathered" in and approved. Carroll and Butchart only raised this argument in passing in their initial brief, saying that their representative argued to the Planning Commission that they should be granted a zoning special exception on this basis and saying "there is a reasonable legal basis for the Court to rule that the Butchart and Carroll property is now 'grandfathered' in." They failed in their initial brief to cite any authority to support their claim and thus are procedurally barred from such an argument. *See Herrin v. Perkins*, 282 So. 3d 727, 733 (¶21) (Miss. Ct. App. 2019) ("Failure to cite legal authority in support of an issue is a procedural bar on appeal. Any failure to cite authority in support of an argument precludes consideration of the issue on appeal."). Citing authority in a reply brief does not rectify this failure. *Robinson v. Burton*, 49 So. 3d 660, 665 n.5 (Miss. Ct. App. 2010) ("We recognize that Robinson does cite some authority in her repy brief, but failure to argue an issue in the principal brief is a procedural bar."). To countenance this would deprive an appellee of the opportunity to respond to the argument.

**WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**