GRIFFIS, J.,
for the Court.
¶ 1. Albert and Alice Duckett appeal the judgment of the Circuit Court of Jackson County affirming the City of Ocean Springs’ (“the City”) decision to allow Harbor Landing to offer food and beverage services. The Ducketts claim the circuit court erroneously failed to (1) apply a de novo standard of review to the interpretation of the city zoning ordinance, (2) hold that the City’s decision was an illegal special-use exception, (3) conclude that the City’s interpretation of the zoning ordinance was arbitrary and capricious, (4) find that the City’s decision amounted to illegal spot zoning, and (5) find that the City’s decision was an illegal variance. We find that the City’s decision was arbitrary and capricious; therefore, the judgment of the circuit court is reversed and rendered. Because this issue is dispositive of the case, we need not address the Ducketts’ remaining assignments of error.
FACTS
¶ 2. Harbor Landing is a boat-storage facility located on the Ocean Springs harbor, in the limited marina district (C-4r-B zone). The City issued a building permit to Harbor Landing owners David and Melba Harris authorizing the rebuilding of a ship’s store and a boat-storage facility after Harbor Landing was damaged in Hurricane Katrina. At that time, Harbor Landing offered pre-made sandwiches and other packaged snacks; it had no on-site food preparation.
¶ 3. Subsequent to the issuance of the permit, Terry Agar, a city building official, read an article in the local newspaper that announced Harbor Landing’s intention to have a deli and sell po-boys and gumbo. Agar sent David Harris a letter warning that the deli would be classified as a restaurant, and the only way Harris would be allowed to operate a restaurant in the harbor zoning area would be to obtain a special-use permit from the City’s planning commission.
¶ 4. After receiving the letter from Agar, the Harrises filed a public hearing application with the City. That application requested that the property be used as a full-service marina. On March 13, 2007, the planning commission held a public meeting and heard from proponents of the deli and from those opposed to the idea of Harbor Landing preparing food. The application was tabled until the next meeting so that more information on parking issues could be obtained.
*407 ¶ 5. At their April 10, 2007, meeting, the planning commission voted to deny the special-use permit. The planning commission also voted to recommend that the Mayor and Board of Alderman of the City of Ocean Springs (“the Board”) prepare an agreement with Harbor Landing limiting the scope of food sales to food prepared off site.
¶ 6. The Harrises appealed this decision to the Board. Before the appeal was heard, the Harrises requested a clarification of the zoning ordinance. Upon the City’s attorney’s review of the ordinance, it was determined that a special-use permit was not allowed under the relevant ordinance; thus, the Board informed the Har-rises that it was impossible for them to obtain a special-use permit. However, the Board further held that the proposed deli qualified as a permitted use under the language of the ordinance. The ordinance governing permitted uses in the C-4-B zone states the following:
In the marina zone the use of buildings, other structures, and the land is restricted to the following:
Yacht clubs, sale or service and supplies including beverages and food for boats and water craft which use the small craft harbor. Specifically prohibited are: All types of commercial marine ways, repair shops or any type of industrial activity.
City of Ocean Springs Zoning Ordinance § 409.2. A resolution was passed interpreting this zoning ordinance to allow Harbor Landing to operate a deli.
¶ 7. The Ducketts, who own a home on the harbor, appealed the City’s ruling to the circuit court. After a hearing on the matter, the circuit court affirmed the resolution of the Board. The Ducketts now appeal the judgment of the circuit court.
STANDARD OF REVIEW
¶ 8. “When [the appellate court] reviews a decision by a circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow.” Miss. Sierra Club v. Miss. Dep’t of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss.2002). “We will entertain the appeal to determine whether the order of the administrative agency[:][ (]1) was unsupported by substantial evidence, [ (]2) was arbitrary or capricious, [ (]3) was beyond the'power of the administrative agency to make, or [ (]4) violated some statutory or constitutional right of the complaining party.” Id. Questions of law are reviewed de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).
ANALYSIS

Whether the City’s decision to allow Harbor Landing to prepare hot food within the limited marina district was arbitrary and capricious and beyond the City’s authority.

¶ 9. The Ducketts claim that the City’s decision was arbitrary and capricious because the City interpreted Harbor Landing’s proposal as a permitted use under the zoning ordinance and then placed restrictions on such use. They question how this use could be a permitted use if various restrictions were necessary. The Ducketts argue that the City, in fact, granted a special-use permit that was not authorized under the zoning ordinance.
¶ 10. The City’s decision has caused confusion on appeal because the City’s ruling in this case is inconsistent. The issue to be determined was whether or not Harbor Landing’s proposal to serve hot food constitutes the “sale or service and supplies including beverages and food for boats and water craft which use the small[-]craft harbor” under the limited ma *408 rina district zoning ordinance.[1] The City found that the proposal was a permitted use under this language of the ordinance. However, the City’s decision did not stop there.
¶ 11. The City further found that: (1) Harbor Landing will primarily provide food to the boating public that use the harbor; (2) because of traffic congestion, Harbor Landing is required to designate parking spaces and provide security from May 1 to September 14 for traffic/parking control during weekends and holidays; and (3) because the neighborhood could be adversely affected by loud noise, Harbor Landing is required to operate from only sun up to sun down. The City concluded that if any of these facts change or representations were not accurate, “any such related permits will be revoked as such use may be deemed non-conforming within the [C-4-B zone].”
¶ 12. This Court discussed the difference in a permitted use and a conditional use in Walters v. City of Greenville, 751 So.2d 1206, 1209 (¶¶ 12-13) (Miss.Ct.App.1999), stating:
In 83 Am.Jur. Zoning and Planning § 213 (1992) the author describes permitted uses: “Some zoning ordinances contain a general provision or cumulative provisions permitting kinds of buildings and uses thereof in less restricted zones that are expressly permitted in the more restricted zones.”
[[Image here]]
In 83 Am.Jur.2d Zoning and Planning § 218 (1992) conditional zoning is described: “Conditional zoning is a device employed to bring some flexibility of use to an otherwise rigid system of control. It is generally used to describe a zoning change granted to an owner subject to condition as generally not applicable to land similarly zoned. ‘Conditional zoning’ involves ordinances which provide either that rezoning becomes effective immediately with an automatic repealer if the specified conditions are not met, or that the zoning becomes effective only upon conditions being met within a certain time.”
¶ 13. On one hand, the City claims to be interpreting what constitutes a permitted use under its zoning ordinance; on the other hand, it claims to have issued a revocable permit to Harbor Landing listing multiple conditions that must be met to maintain such permit. Both parties agree, based on the opinion of the City’s attorney,[2] that a special-use or conditional-use permit is not permitted in the limited marina district. In the City’s brief, it argues *409 that a special permit was not issued by the City; instead, the City “simply interpreted the language of its zoning ordinance and nothing more.” We find this argument unconvincing considering the additional restrictions applied by the City.
¶ 14. Had the City simply interpreted Harbor Landing’s proposal as a permitted use, without further restrictions, this Court would be bound to give deference to the City’s interpretation, as it was the enacting body of the ordinance. Faircloth v. Lyles, 592 So.2d 941, 945 (Miss.1991). However, we find, as did the circuit court, that the City in actuality granted a special-use permit. Had this been a true interpretation of the ordinance, there would be no further action required by the City. There would be no permit to revoke.
¶ 15. We find that the City’s decision was an attempt to circumvent its inability to issue a special-use permit in the limited marina district. Accordingly, the decision was arbitrary and capricious and beyond the City’s authority. As the Ducketts state in their brief, the City essentially attempted to re-zone the limited marina district without complying with the statutory protections attendant to a rezoning action. If the City wishes to have the ability to grant such permits in this zoning district, the proper steps to amend the zoning ordinance should be taken. See, e.g., Miss.Code Ann. § 17-1-17 (Rev.2003) (requiring fifteen days’ notice of a hearing be given in an official paper or paper of general circulation). The circuit court’s judgment affirming the City’s decision is reversed and rendered.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE, P.J., IRVING, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, P.J., AND ISHEE, J., NOT PARTICIPATING.

. Contrary to the dissent's argument, the record shows that whether the hot food proposed by Harbor Landing actually constituted “food” under the ordinance was never at issue. Rather, the opponents of the proposal argued that the hot food was intended to be served to the general public, not solely to the boating public as the ordinance requires. Their concerns included greater noise and congestion due to patrons driving and parking vehicles in the limited area of the harbor as opposed to arriving by boat.

. The City's attorney, in a memorandum to the Board, stated the following about the limited marina district:
Upon review of Section 409 of the City of Ocean Springs Zoning Ordinance, I could find no language where a special exception or special use could be provided. A review of past City minutes indicates that in January of 2005 language similar to that found in other districts that would allow for special exceptions was tabled by the Board and not taken up or enacted into an ordinance. Therefore, what comes before the Board is whether or not this Board makes a finding of fact based on the evidence presented by Mr. Harris that his proposal has a primary intended use as "sale or serve and supplies including beverages and food for boats and watercraft which use the Small[-]Craft Harbor."